2025 IL App (2d) 250444-U
No. 2-25-0444
Order filed December 23, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 25-CF-2207 |
| EDUARDO A. LEON, | ) ) ) | Honorable Salvatore LoPiccolo & John A. Barsanti, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    There was no error in the circuit court's pretrial detention determination based on defendant's dangerousness; defendant is a repeat felon, he was charged with a detainable offense, and he admitted to unlawfully possessing a firearm as a prohibited person.

¶ 2    Defendant, Eduardo A. Leon, appeals from an order detaining him prior to trial for non-probationable weapons offenses, including unlawful possession of a firearm by a repeat felony offender, (720 ILCS 5/24-1.7(a) (West Supp. 2025) (formerly known as "armed habitual criminal")), possession of a weapon by a person previously convicted of a forcible felony (720 ILCS 5/24-1.7(a) (West 2024)), and possession of a firearm by a street gang member (720 ILCS

5/24-1.8(a)(2) (West 2024)). The appellate defender has declined to file argument on defendant's behalf and, after examining the record and defendant's motion for relief, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Although the evidence is only preliminary at this stage, the parties did not dispute the facts of record. For context, we note that defendant, now age 25, was previously convicted of aggravated unlawful use of a weapon (AUUW). Five days into his probation sentence, defendant committed the felony offense of aggravated fleeing and eluding a peace officer. The following month, defendant committed a strongarm robbery. Defendant was convicted of each charge and received two separate three-year prison sentences for those felonies, and his initial probation for AUUW was unsatisfactorily terminated. Defendant has also had multiple contacts with the Elgin police department and is a known member of the "Maniac Latin Disciples" street gang, which, again, the defense has not disputed.

¶ 5      After defendant's arraignment, a detention hearing was held before the circuit court (Judge LoPiccolo) pursuant to 725 ILCS 5/110-6.1 (West 2024). There, the State's primary allegation was that defendant had committed several detainable offenses, was a real and present threat to the community, and that less restrictive means would not mitigate . *Id.* §§ 110-6.1(a)(1), (a)(6)(D), (a)(6)(O)(i). The parties proceeded by way of proffer and no live testimony was introduced.

¶ 6      The State's evidence showed that on September 12, 2025, Elgin police were alerted that three men were in possession of a silver gun near an event at Elgin High School. Police responded and attempted to stop the men, but they fled on foot. Defendant was observed entering the front passenger seat of a black Chevy Tahoe, which sped off. Later, police located the vehicle, and found the driver, defendant's girlfriend, Diana Hernandez. Defendant was no longer in the car. Officers observed open alcoholic beverages in the vehicle and arrested Hernandez. An inventory search of

the vehicle recovered a .40-caliber Smith & Wesson semi-automatic handgun, with a black frame and silver stainless-steel slide, on the front passenger seat floorboard, hidden under a box of alcoholic beverages. The police interviewed Hernandez, who identified defendant as her boyfriend of three months. According to Hernandez, defendant had been sitting in the front passenger seat "throughout the night."

¶ 7    Four days later, defendant voluntarily went to the Elgin police department to speak with detectives. Defendant stated that Hernandez had picked him up from a football game at Elgin High School on the day of the incident. Defendant stated that he and the two other males—Alexander Vargas and Roger Ibarra—had all been in Hernandez's vehicle and had "pass[ed] the pistol around [to each other] in the car." Defendant identified a picture of the recovered Smith & Wesson pistol and told police that his DNA would be on it. After they fled from the police, defendant then left the handgun on the passenger seat floorboard because he "was the last one to hold it." According to defendant, the handgun belonged to Vargas. The police report also identified Ibarra as a member of the "Maniac Latin Disciples" in Carpentersville.

¶ 8    The State noted that defendant is a thrice-convicted felon who cannot lawfully possess any firearm under any circumstances. The State also pointed out defendant's history of non-compliance with court orders by, for example, having previously committed a forcible felony while on probation for a prior weapons offense. In response, defense counsel represented that defendant provides care for his four-month-old son, is employed, and resides with his mother and his sisters. Defense counsel asserted that defendant would comply with any pretrial conditions and emphasized that defendant voluntarily spoke with the police, as opposed to the police having to seek an arrest warrant.

¶ 9     The circuit court agreed with the State and entered a detailed handwritten order setting forth its findings. Specifically, the court found clear and convincing evidence that defendant had committed a detainable offense, that he presents a danger to the community, and that no pretrial release conditions would mitigate the threat he poses. See 725 ILCS 5/110-6.1(a). In particular, the court noted that GPS tracking and electronic home monitoring would only be useful in locating defendant, but could do nothing to keep a gun out of his hands. The court found that defendant had serially demonstrated "an inability to follow court orders." A few days later, the defense filed a motion for relief, which was heard and denied by the circuit court (Judge Barsanti). This timely appeal followed.

¶ 10                                II. ANALYSIS

¶ 11    Our review is confined to the claims raised in defendant's motion for relief (see Ill. S. Ct. R. 604(h)(2), (h)(7) (eff. Apr. 15, 2024)), which merits little discussion. Where parties to a pretrial detention hearing proceed solely by proffer, our review is *de novo*. *People v. Morgan*, 2020 IL 130626, ¶ 51; *People v. French*, 2025 IL App (2d) 250035-U, ¶¶ 22-27.

¶ 12    Pursuant to 725 ILCS 5/110-6.1 (West 2024), the State may seek pretrial detention based on the defendant's dangerousness or risk of willful flight. Under the dangerousness standard, the State must prove by clear and convincing evidence that (1) "the proof is evident or the presumption great" that the defendant has committed a detainable offense, (2) "the defendant poses a real and present threat to the safety of any person or persons or to the community;" and (3) "no condition or combination of conditions" can mitigate that threat. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; see also *People v. Morales*, 2024 IL App (2d) 230597 ¶ 15.

¶ 13    Defendant's motion for relief was largely comprised of block quotations of the State's motion to detain, restating the evidence from the detention hearing, followed by the general assertion that the evidence was, somehow, not clear and convincing. Like the circuit court, we determine that such a motion is unpersuasive.

¶ 14    First, without any citation to authority, the motion asserts that "[d]efendant's prior offenses and possession of a firearm are elements of the offense and *cannot be used as a basis to detain.*" (Emphasis added.) The failure to cite authority for that proposition is unremarkable as that sentence verges on absurdity. The nature of the charged offense, its elements, and the State's preliminary evidence supporting the charge, are inexorably part of a detention hearing based on allegations of the defendant's dangerousness. The operative statute repeatedly instructs circuit courts to make such an assessment "based on the specific articulable facts of the case" (see 725 ILCS 5/110-6.1(a)(1) through (a)(7) (West 2024))—and logically it could not be otherwise. Moreover, the statutory authority is clear that the presence of a weapon in the commission of an offense, and a defendant's prior criminal history *must* be considered in assessing his dangerousness. 725 ILCS 5/110-6.1(g)(1), (g)(2)(A) (West 2024). We think it more likely that the motion meant to say that the fact a defendant has been charged cannot be used as the *sole* basis for his detention, which is true. But to suggest that the facts and elements of the offense *cannot* be considered *at all* is nonsensical.

¶ 15    Next, defendant's motion for relief also emphasized that "[he] went voluntarily to the police department" and "[t]here was no warrant for his arrest" before concluding that "he was not a threat to flee." Even if it were conceded that defendant is not a flight risk, that observation would only have value under the willful-flight standard. 725 ILCS 5/110-6.1(a)(8) (West 2024). Here, however, defendant was again detained under the dangerousness standard (*id.* §§ (a)(1), (a)(6)(D),

(a)(6)(O)(i)), and his apparent willingness to speak to police *after* committing a felony weapons offense offers little insight into how to protect the public from the crime itself.

¶ 16　　Finally, to the extent defendant asserted that the police synopsis and reports were insufficient to demonstrate that the proof was evident or presumption great that he committed a detainable weapons offense, we reject the assertion. It is well-settled that a police synopsis alone is sufficient to sustain the State's burden at a detention hearing. See, *e.g.*, *People v. Horne*, 2023 IL App (2d) 230382, ¶¶ 22-24. That evidence demonstrated that defendant's criminality is not isolated to his youth but has persisted through his adulthood. Few things could be more dangerous than an adult felon, who maintains a gang affiliation, illegally in possession of a pistol, near a high school event. Like the circuit court, we determine that the same clear and convincing evidence shows defendant committed a detainable offense, that he poses a real and present threat to the community, and that no less restrictive conditions would be appropriate.

¶ 17　　　　　　　　　　　　　　III. CONCLUSION

¶ 18　　For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 19　　Affirmed.