NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 260088-U

NOS. 4-26-0088, 4-26-0089, 4-26-0090 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 30, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Whiteside County |
| GREGORY S. McELHINEY, | ) | Nos. 24CM101 |
| Defendant-Appellee. | ) | 24CF229 |
| | ) | 24MT242 |
| | ) | |
| | ) | Honorable |
| | ) | James F. Heuerman, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Steigmann and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The State failed to meet the burden required for revocation of defendant's pretrial release, so the trial court rightly denied the State's motion for relief.

¶ 2    Defendant Gregory S. McElhiney was initially given his pretrial release on the charges at issue in this appeal, but the trial court later revoked his release pursuant to section 110-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6 (West 2024)). Later still, the court placed him back on pretrial release with increased conditions. The State filed a motion for relief asking the court to vacate that order. The court denied the motion, and the State now appeals. We affirm.

¶ 3                          I. BACKGROUND

¶ 4                          A. Pretrial Release

¶ 5 Between April and August 2024, defendant was charged in three separate matters in the circuit court of Whiteside County. In reconstructing the history of the charges at issue here, we take judicial notice of the trial court's electronic records. *People v. Johnson*, 2021 IL 125738, ¶ 54; *People v. Green*, 2024 IL App (1st) 231167, ¶ 3 n.1.

¶ 6 In case No. 24-CM-101, defendant was charged by information in April 2024 with the offenses of possession of drug paraphernalia, a Class A misdemeanor (720 ILCS 600/3.5(a) (West 2024)), and driving while his license was revoked, a Class A misdemeanor (625 ILCS 5/6-303(a) (West 2024)). He was initially released on a notice to appear.

¶ 7 In May 2024, defendant was charged by information in case No. 24-MT-242 with driving while his license was revoked, a Class A misdemeanor (625 ILCS 5/6-303(a) (West 2024)). He was also initially released in that matter.

¶ 8 Defendant was then charged by information in case No. 24-CF-229 with unlawful possession of a weapon by a felon, a Class 2 felony (720 ILCS 5/24-1.1(a) (West 2024)), and criminal damage to property, a Class A misdemeanor (720 ILCS 5/21-1(a)(1) (West 2024)), with both offenses alleged to have occurred in August 2024. Defendant is alleged to have inflicted less than $500 damage to another person's vehicle by firing a gunshot into it while it was unoccupied. He appeared on the State's petition to deny pretrial release. The trial court found that the State had met its burden under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2024)) and ordered defendant detained, reasoning that he "has 8 prior felony convictions & he fired a firearm at a vehicle in a residential area where others were present." The court later revisited detention and, in October, entered an order releasing him subject to conditions of reporting in person, not possessing a firearm, adhering to no-contact orders, and GPS monitoring.

¶ 9 B. Additional Conditions of Pretrial Release

¶ 10                    1. *New Charges While on Pretrial Release*

¶ 11          In May 2025, while on pretrial release awaiting trial on the charges at issue here, defendant was charged in a new case (25-CF-167) with three offenses: possession of methamphetamine with intent to deliver (15 to 100 grams), a Class X felony (720 ILCS 646/55(a)(1) (West 2024)); possession of methamphetamine (15 to 100 grams), a Class 1 felony (720 ILCS 646/60(a) (West 2024)); and driving while his license was revoked, a Class A misdemeanor (625 ILCS 5/6-303(a) (West 2024)).

¶ 12                    2. *Petition to Revoke Pretrial Release*

¶ 13          Relying on the new charges, the State filed a petition to revoke defendant's pretrial release in the cases at issue here (24-CM-101, 24-MT-242, and 24-CF-229). After a hearing, the trial court found by clear and convincing evidence that defendant had been charged with a subsequent felony or Class A misdemeanor while on pretrial release and that no condition or combination of conditions would reasonably ensure his appearance in court or prevent him from being charged with a subsequent felony or Class A misdemeanor. 725 ILCS 5/110-6 (West 2024). Consequently, defendant's release was revoked and he was detained.

¶ 14                    3. *Defendant's Motion for Relief From Pretrial Detention*

¶ 15          In November 2025, defendant filed a motion for relief from pretrial detention in the consolidated cases. At the hearing on the motion, he argued that the revocation of his pretrial release had been predicated on the new methamphetamine charges, and he challenged the strength of the evidence underlying those charges. He also contended that stringent conditions could reasonably mitigate any risk of future criminal conduct, listing a number of conditions by way of suggestion. He further noted that he was employed and had stable housing, a child, and an ill father.

¶ 16        The State, in turn, argued that no conditions would mitigate the dangers defendant posed on release and would be infeasible to implement. It read into the record, without objection, defendant's criminal convictions from 2001 to 2021, including three convictions for possession of liquor (Class A misdemeanor); three convictions for unlawful possession of methamphetamine (Class 3 felony); single convictions for aggravated driving under the influence (Class 4 felony), driving with a suspended license (Class A misdemeanor), domestic battery (Class A misdemeanor), burglary (Class 2 felony), forgery (Class 3 felony), theft (Class 3 felony), and unlawful possession of and intent to deliver methamphetamine (Class 2 felony); and one charge of possession of a controlled substance (Class A misdemeanor) (unknown disposition). The State also read into the record that probation was revoked for a few of these convictions, resulting in confinement in the Illinois Department of Corrections.

¶ 17        The trial court indicated the primary concern was preventing new drug charges. Because GPS monitoring did not work the last time, the court felt that additional conditions would be necessary. The court then granted defendant's motion for relief from pretrial detention and ordered him released, but it added the following new conditions: home confinement, home searches, drug testing, installation of a video doorbell camera at each entrance and exit of the residence, and the requirement that defendant provide the Office of Statewide Pretrial Services (Pretrial Services) with credentials to view the doorbell video footage.

¶ 18                        4. *The State's Motion for Relief*

¶ 19        In January 2026, the State filed a motion for relief, primarily arguing that the trial court erred in finding the conditions sufficient to mitigate the dangers that defendant's release posed. Specifically, the State contended that the conditions were not contemplated by the statute, were burdensome on pretrial service resources to monitor the cameras, and did not meaningfully

address the circumstances that had resulted in revocation. Defendant responded that the conditions were not arbitrary and were not intended to require constant monitoring. He represented that the cameras had already been installed and that there had been no reported violations of the conditions since his release.

¶ 20    After considering the parties' arguments, the trial court then sought clarification on the posture of the case. The parties agreed that the issue was revocation, not denial, of pretrial release, such that the appropriate focus was ensuring defendant's presence at subsequent hearings and preventing additional felonies or Class A misdemeanors.

¶ 21    The trial court then proceeded to analyze whether the newly imposed conditions of release would be sufficient. It noted that the use of video doorbell cameras at every entrance of the home was a novel approach. The court stated that while the cameras would be unable to prevent defendant from violating the conditions of release, they would deter him from further violations because he would not know when someone was watching. Additionally, the recordings could be played back later if suspicious activity took place, and the sensors could alert Pretrial Services when movement occurred. The court denied the State's motion for relief.

¶ 22    This appeal followed.

¶ 23                    II. ANALYSIS

¶ 24    On appeal, the State argues that the trial court erred in reinstating defendant's pretrial release because the conditions put into place are insufficient. Neither party disputes that the new charges make defendant eligible to have his pretrial release revoked.

¶ 25    Defendant contends that the State waived its argument concerning revocation by failing to properly raise it in its motion for relief. However, the State did allege in its motion for relief that the trial court revoked pretrial release under section 110-6 of the Code (725 ILCS 5/110-

6) (West 2024)) and that it was challenging the court's ruling about the reasonableness of the conditions of release and whether they mitigated "the danger that the Court found existed." Further, at the hearing on the motion for relief, the State made generally applicable arguments about the conditions of pretrial release, with their attendant risks and mitigating effects. On that record, we reject defendant's contention that the State has waived consideration of the propriety of the court's decision to reinstate his pretrial release.

¶ 26 The trial court's initial decision to revoke defendant's pretrial release is governed by section 110-6 of the Code (725 ILCS 5/110-6 (West 2024)). *People v. Hill*, 2025 IL App (4th) 250010, ¶ 23. The statute provides, in relevant part:

> "The court shall consider all relevant circumstances, including, but not limited to, the nature and seriousness of the violation or criminal act alleged. The State shall bear the burden of proving, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(a) (West 2024).

The parties agree that we may apply *de novo* review because the proceedings involved only the parties' proffers. *People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 27 Here, the State expresses no concern about defendant's ability to attend court appearances, but it argues that he is at significant risk of committing a subsequent felony or Class A misdemeanor. The State points to defendant's criminal record, the details of which are summarized above.

¶ 28    In light of his criminal history, we agree with the State that defendant presents a tangible risk of committing a felony or Class A misdemeanor while on pretrial release. Indeed, this appears to be the reason the trial court initially revoked his pretrial release. Consequently, our attention now turns to the question of whether the conditions imposed were adequate to mitigate the risk.

¶ 29    The State contends that the conditions relating to the video doorbell camera are not among those provided for by statute. However, the statute permits "reasonable conditions as the court may impose, so long as these conditions are the least restrictive means to achieve the goals listed in subsection (b), are individualized, and are in accordance with national best practices as detailed in the Pretrial Supervision Standards of the Supreme Court." 725 ILCS 5/110-10(b)(9) (West 2024). The appellate court has interpreted this language to mean that "where section 110-10 lists conditions that may not be imposed, the inference is that conditions not included in that list are permissible ***." *People v. Morales*, 2024 IL App (2d) 230597, ¶ 14. Additionally, because the statute specifically prohibits some types of pretrial release conditions, we can infer that other reasonable conditions are not prohibited. *Id.* Perhaps more fundamentally, the State does not argue against the efficacy of the video doorbell condition fashioned by the trial court.

¶ 30    We also add that, while the parties agree that we should review the issue presented here *de novo*, we do not casually disregard the trial court's superior knowledge of the conditions of pretrial release available to it. There is a degree of "on the ground" understanding of the arsenal of available conditions that we cannot hope to match. We find the video doorbell condition imposed to be creative and proper.

¶ 31    The State also argues there was no material change since the last pretrial release and that none of these additional supervision measures address the underlying concern that

defendant had already violated a pretrial release in the commission of a serious felony offense. However, the numerous additional efforts in mitigation have the effect that nobody can enter or exit defendant's home without Pretrial Services' knowledge. One of the intended purposes of the video doorbell camera is to alert authorities when there is movement, such that efforts to violate the pretrial release conditions will, at least in theory, be apprehended quickly.

¶ 32     Overall, despite defendant's tendency towards recidivism, the conditions put into place are significantly more stringent than those imposed previously, and they appear to have developed at least an initial record of success. While they cannot guarantee that defendant will avoid a subsequent charge for a felony or Class A misdemeanor while on pretrial release, no condition could ever guarantee such a result. The relevant question is whether the conditions are reasonably fashioned to prevent subsequent reoffenses. We find that they are, and we conclude that the trial court did not err in denying the State's motion for relief.

¶ 33                              III. CONCLUSION

¶ 34     For the reasons stated, we affirm the trial court's judgment.

¶ 35     Affirmed.